IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT A. SCANDLON, JR., On behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUE COAT SYSTEMS, INC., BRIAN M. NESMITH and GORDON C. BROOKS,<br><br>Defendants.<br>_____/ | No. C 11-4293 RS<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

## I. INTRODUCTION

This shareholders' putative class action arises from a steep decline in the share price of Blue Coat Systems, Inc. the day after the company released financial results and provided forward-looking guidance that was less optimistic than previously anticipated. The company had not missed any of its prior projections, and the disclosures preceding the fall in share prices included no admissions of accounting irregularities or any other kind of prior error or omission. Nevertheless, plaintiff contends an inference can be drawn that Blue Coat had intentionally misled the market by making unduly positive statements about its business and prospects, with knowledge that actual conditions were less favorable. Because the factual allegations are insufficient to support a claim

under the applicable standards of pleading, defendants' motion to dismiss will be granted, with leave to amend.

## II. BACKGROUND

The operative First Amended Complaint contends that Blue Coat and two of its executives ("the Insider Defendants") are liable for fraud under §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. Plaintiff[1] also seeks to hold the Insider Defendants responsible under §20(a) of the Exchange Act, as "controlling persons," who have derivative liability for any underlying violations of §10(b) by Blue Coat. The Insider Defendants are (1) Blue Coat's President and Chief Executive Officer, Brian M. NeSmith, and ; (2) its Chief Financial Officer Principal Accounting Officer and Senior Vice President, Gordon C. Brooks. NeSmith is alleged to have sold stock during the class period; Brooks is not.

As plaintiff characterizes it, "[t]his is a case about a company and certain of its insiders who, during a narrow and focused time period, knowingly misled investors and securities analysts by painting a falsely optimistic picture of Blue Coat's health, prospects, growth, and the extent of its actual sales. While this was going on, the Company's CEO took the opportunity to unload 20% of his Blue Coat shares – for proceeds of nearly $5 million – before the Company came clean and its stock price fell." The alleged class period is November 24, 2009 to May 27, 2010. On the last day of the proposed class period, Blue Coat released financial results and held a conference call with analysts. When the market opened the following day, Blue Coat shares "lost over a quarter of their value, plunging $7.37 per share, down to $21.47 on trading volume 16 times the average volume for the Class Period. "

As noted, Blue Coat did not fail to meet any of its financial projections, and did not otherwise directly admit or imply that any of its prior representations had been incorrect. Nevertheless, plaintiff contends the disclosures "revealed facts that indicate [defendants'] prior

---

[1] Although the caption of this action still shows Robert A. Scandlon, Jr. as the plaintiff, in the FAC the sole plaintiff is now Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters, which allegedly "purchased the common stock of Blue Coat during the Class Period and has been damaged thereby."

2

1  statements about Blue Coat's strength in [the Europe, Middle East and African] market and their
2  stated expectations for continued revenue growth in [that] market had been untrue."

3    Blue Coat's primary product offerings can be generally categorized as related either to web
4  security or wide-area network (WAN) optimization. In 2008, it acquired Packeteer, Inc. in an effort
5  to expand its WAN optimization business, which it intended to accomplish through Packeteer's key
6  product, PacketShaper. Prior to that, Blue Coat had largely focused on selling web security
7  products. Plaintiff contends that the shift from selling web security products to selling WAN
8  optimization products had a detrimental impact on Blue Coat. Plaintiff claims that not only did Blue
9  Coat begin losing ground in the highly competitive web security market, but in WAN optimization
10 it was jumping in where it had little experience and where there was already a clear market leader.
11 Moreover, Blue Coat's sales team was focused on selling web security products, not WAN
12 optimization products. As the FAC puts it: "Confidential witnesses have noted that Blue Coat's
13 sales force simply did not properly understand WAN optimization in order to effectively sell it and
14 that this resulted in 'a dramatic decline in the user base and new customers.' Ultimately, Blue
15 Coat's European sales force was 'far more comfortable selling security products' even though the
16 emphasis at the top level of management had migrated to the WAN optimization market." Plaintiff
17 insists that Blue Coat and members of its senior management were well aware that the Company
18 faced "a slackening in demand for its products, severe competitive obstacles, and real difficulties
19 enabling its team to sell the new WAN optimization products," but "misrepresented that the
20 Company was prospering nonetheless."

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Claims

3

grounded in fraud are also subject to Rule 9(b), which provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy that rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 US at 570). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 US at 555 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true). In actions governed by the Private Securities Litigation Reform Act ("PSLRA"), such as this one, these general standards are subject to further refinement, as discussed in more detail below.

IV. DISCUSSION

A. Count I—Section 10(b) of the Exchange Act

Section 10(b) of the Exchange Act makes it unlawful for "any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Pursuant to Section 10(b), the Securities and Exchange Commission ("SEC") has promulgated Rule 10b-5, which

4

provides, *inter alia*, "It shall be unlawful for any person ... [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(c).

To establish a violation of Rule 10b-5, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Systems, Inc. Securities Litigation*, 411 F.3d 1006, 1014 (9th Cir. 2005). To survive a motion to dismiss, a complaint asserting claims under section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Rule 9(b) and the PSLRA. *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

### 1. *Falsity*

The allegedly "false" statements on which plaintiff bases its claims are a hodgepodge of generally positive statements Blue Coat was making about the then-existing state of its business, with some implications that continued or increased future success could be expected. It is difficult to parse out exactly what plaintiff contends the actual misrepresentations were. In part that uncertainty results from the nature of plaintiff's basic theory that the the overall tone and implications of *all* the positive statements made by the company during the class period created a misleading impression, given what the company allegedly knew, but was not disclosing. Nevertheless, plaintiff's theory does not excuse it from pleading with sufficient specificity and clarity demonstrably false assertions of fact and/or material omissions of information as to which a duty to disclose existed.

Plaintiff's attempt to allege material misrepresentations or omissions of fact fail for at least three interrelated reasons. First, there is the simple problem of specificity. Merely quoting long passages from various public statements, even with the use of bold face type to emphasize certain phrases, is not a substitute for identifying what representations allegedly were false and why. Second, a substantial portion of the statements quoted in the complaint as containing misrepresentations are best characterized as "puffery" or other non-specific assertions that cannot

give rise to a fraud claim. While plaintiff may be correct that terms like "strong" and "solid" are not *always* inactionable, plaintiff has not alleged statements in which defendants' use of those terms rise to more than general characterizations and opinions. Even assuming plaintiff may be able to show defendants were aware of additional negative indicators that they did not disclose, that would not establish that such subjective and non-specific characterizations were false or misleading when made.

Finally, the gravamen of plaintiff's complaint is that the language defendants used in their public statements was unduly rosy, given negative information allegedly in their possession at the time. Businesses are entitled, however, to synthesize and analyze the available information, and to reach judgments as to how "rosy" things are or are not. Not every detail that informs the overall opinions expressed must be disclosed to avoid committing fraud, even if some of the judgments subsequently turn out to have been wrong. Accordingly, the FAC does not sufficiently allege and identify material misrepresentations or omissions to state a viable claim.

### 2. Scienter

The PSLRA expressly provides that to plead scienter, a complaint must, "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the Supreme Court defined "strong inference," such that a securities fraud complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter *cogent and at least as compelling as* any opposing inference one could draw from the facts alleged." 127 S.Ct. at 2510 (emphasis added).

Here, the absence of an adequate pleading of material misstatements or omissions necessarily means plaintiff has failed to plead scienter as well. The nature of plaintiff's basic theory, moreover, presents an additional challenge to its ability to plead scienter in any amended complaint. In essence, plaintiff is alleging that Blue Coat made bad business judgments and poorly executed its changes in strategy after the Packeteer acquisition. While plaintiff is trying to argue that Blue Coat management had become aware of such shortcomings by the time it was making the generally

positive public statements in issue, an equally plausible inference is that to the extent any statements were unduly positive, that was merely another aspect of management's failure to understand and respond well to business conditions.

*Tellabs* instructs that the Court must determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." 127 S.Ct. at 2509. The evaluation requires the Court to take into account plausible opposing inferences." *Id.* Notably, this "inquiry is inherently comparative." *Id*. at 2510. As explained in *Zucco*, "[a] court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." 552 F.3d at 991. At least at this juncture, even to the extent anything in the FAC could be seen as an adequate allegation of a material misrepresentation or omission, plaintiff has not pleaded facts to support a compelling inference that any such misrepresentations or omissions were the result of an intent to deceive, as opposed to a failure to analyze business conditions correctly.[2]

### 3. Loss Causation

Because the FAC does not adequately identify material misstatements or omissions, it follows that plaintiff has not alleged sufficient facts to show loss causation. Again, the nature of plaintiff's basic theory presents a challenge; because it is not alleging that the stock price fell in response to a "corrective disclosure," it may ultimately be more difficult to show a causal connection between any alleged misstatements or omissions and the alleged losses. As plaintiff points out, however, a company need not expressly admit to prior misstatements or omissions for

---

[2] Plaintiff points to stock sales during the class period by NeSmith as indicative of scienter. As *Zucco* held, "[f]or individual defendants' stock sales to raise an inference of scienter, plaintiffs must provide a 'meaningful trading history' for purposes of comparison to the stock sales within the class period." 552 F.3d at 1005. The FAC provides no such information. Even to the extent NeSmith's sales can be seen as possibly supporting scienter, those allegations fall far short of creating the requisite "strong inference." Indeed, the FAC expressly states plaintiff does *not* "rely primarily on allegations of insider sales to establish scienter."

there to be a viable claim under Rule 10b-5. Accordingly, while plaintiff has not adequately alleged loss causation at this juncture, it would be premature to conclude that it will be impossible for it to do so.[3]

### B. Count II—Section 20(a) of the Exchange Act

Section 20(a) of the Exchange Act makes certain "controlling" individuals also liable for violations of Section 10(b) and its underlying regulations. Specifically, section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

There is no dispute that any liability under Section 20(a) in this action is dependent on the existence of an underlying violation of Section 10(b). In view of the dismissal of the 10(b) claims, this count must also be dismissed, with leave to amend.

---

[3] The FAC includes some conclusory and non-specific allegations regarding possible "channel stuffing" or other improper revenue recognition practices. Even if those allegations were sufficiently detailed, it might be impossible to establish loss causation in view of the fact that there is no indication that the drop in stock price was the result of the market becoming aware of any such practices.

## V. CONCLUSION

The motion to dismiss is granted. Any amended complaint shall be filed within 30 days of the date of this order. A further Case Management Conference will be held on March 21, 2013 at 10:00 a.m., subject to a continuance in the event a further motion to dismiss is then pending.

IT IS SO ORDERED.

Dated: 1/25/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE